UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
ROBERT NEELY,                        : 07 Civ. 9267 (SHS)(JCF)
                                     :
            Petitioner,              :      REPORT AND
                                     :      RECOMMENDATION
     - against -                     :
                                     :
L. MARSHALL, Acting                  :
Superintendent, Sing Sing            :
Correctional Facility,               :
                                     :
            Respondent.              :
- - - - - - - - - - - - - - - - - -:
TO THE HONORABLE SIDNEY H. STEIN, U.S.D.J.:

     Robert Neely, proceeding *pro* *se*, brings this petition for a
writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his
conviction in New York State Supreme Court, New York County, for
criminal possession of a weapon in the third degree.  Mr. Neely
contends that he was denied effective assistance of counsel at trial
and on appeal.  For the reasons set forth below, I recommend that
the petition be denied.

Background

     A.   The Arrest

     In the early morning of November 29, 2001, four New York City
police officers observed the petitioner, Mr. Neely, drinking a beer
on the corner of West 142nd Street and Eighth Avenue in Manhattan.
(H. at 14-16).[1]  One of the officers asked him to approach their

---

    [1] "H." refers to the transcript of the petitioner's Mapp
hearing, which took place July 15, 2002.  The purpose of a hearing
pursuant to Mapp v. Ohio, 367 U.S. 643 (1961), is to determine
whether evidence implicating a criminal defendant was obtained

vehicle, but Mr. Neely ignored him and walked away. (H. at 17, 135). The officer then explained to the petitioner that he intended to issue a summons for an open container violation. (H. at 18, 135). Upon hearing this, Mr. Neely adjusted his groin area and began running. (H. at 18-19, 135).

Several officers pursued Mr. Neely on foot, following him into a nearby apartment building. (H. at 22-23, 52). The chase continued throughout the building and into the sub-basement, where the petitioner fell down some stairs. A bag containing marijuana was found next to him after he fell. (H. at 24-26, 136). After a struggle, the officers handcuffed Mr. Neely and placed him under arrest. (H. at 24, 136).

While frisking Mr. Neely, one of the officers recovered a loaded .9-millimeter gun from his pants. (H. at 27, 136). A subsequent search at the precinct revealed two additional bags of marijuana and twelve vials containing a substance that appeared to be crack cocaine in the pockets ofMr. Neely's pants. (H. at 28-29, 136-37).

A New York County Grand Jury charged the petitioner with criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02(4)), criminal possession of a controlled substance in the seventh degree (N.Y. Penal Law § 220.03), and criminal possession

---

through an illegal search and should therefore be suppressed.

of marijuana in the fourth degree (N.Y. Penal Law § 221.15).[2]

B.    The Mapp Hearing

The petitioner moved to suppress evidence recovered during his arrest.  At a Mapp hearing in July 2002, Justice Herman Altman denied the motion in its entirety.  (H. at 138).  During that proceeding, he also explained the different statutory sentencing categories to the petitioner and reviewed his rap sheet.  (H. at 7-11).  The court specifically addressed a 1992 violent felony conviction, noting that the petitioner had received only a one-year sentence.  (H. at 8).  Because the petitioner also had a violent felony conviction from 1987, Justice Altman questioned why the court in 1992 failed to sentence him as a predicate felon.  (H. at 8-9).  The prosecutor suggested that the court review the minutes of the 1992 plea allocution in order to know how to factor that conviction into the sentence to be imposed for Mr. Neely's most recent crime.  (H. at 8).

C.    The Plea

Later that day, Mr. Neely appeared for a plea proceeding. The prosecution initially offered Mr. Neely a sentence of fourteen years to life imprisonment in exchange for his plea.  (P. at 2).[3]  This offer covered the firearm charge as well as a separate case against

_____

[2] Mr. Neely ultimately did not receive a summons for the open container violation.  (H. at 32-33).

[3] "P." refers to the transcript of the petitioner's plea allocution.

3

the petitioner for assault and attempted robbery, but Mr. Neely insisted on contesting the other case and refused the offer. (P. at 2-3). Justice Arlene Silverman informed the petitioner that if he wanted to go to trial on the second case, he could take a plea only to the present charge. (P. at 3-6).

The judge explained that in exchange for a guilty plea, the petitioner would receive a sentence according to his prior record. (P. at 6). Noting that Mr. Neely's record showed two prior violent felony convictions (P. at 3), the court accordingly described three possible sentences. (P. at 7-8). If both prior convictions were valid, the petitioner would be categorized as a "persistent violent felony offender" and would receive a sentence of twelve years to life imprisonment, the minimum available in that category. (P. at 7-8). If only one of the convictions was valid, he would receive seven years as a "second felony offender." (P. at 8). If both prior violent felonies on the petitioner's record were invalid, he would receive five years as a "predicate non-violent felony offender." (P. at 8). Justice Silverman specified the prescribed sentences several times throughout the plea hearing. (P. at 6-11, 13).

The petitioner informed the court that he intended to challenge the two predicate convictions, but nevertheless wanted to accept the plea agreement. (P. at 9). Justice Silverman advised him that he "may be unsuccessful" in challenging the convictions, and Mr. Neely

replied, "All right." (P. at 9-10). The judge then asked him, "Do you want to plead for twelve to life?", and the petitioner answered, "Yes." (P. at 10).

Throughout the hearing, Mr. Neely repeatedly affirmed that he understood the terms of the agreement and the range of possible sentences. (P. at 4, 6, 10-14, 16-17). Justice Silverman also addressed petitioner's attorney, and counsel confirmed that she had explained the offer to the petitioner, that it was "clear to him," and that he wanted to accept it. (P. at 10). The judge explained to Mr. Neely, "If you don't want to go to trial, once you admit you're guilty, you are guilty." (P. at 11). The petitioner asserted, "I don't want to go to trial on this case." (P. at 11). Mr. Neely then waived his right to trial and confirmed that his plea was voluntary. (P. at 11-13).

The court accepted his guilty plea for criminal possession of a weapon. (P. at 14-15). By pleading guilty, the petitioner avoided a potential sentence of twenty years to life that the prosecution intended to seek at trial. (H. at 4).

After accepting the guilty plea, Justice Silverman then went over the predicate felony statement provided by the prosecution. (P. at 15). She promised the petitioner that she would "make a ruling" as to whether the two predicate convictions were valid. (P. at 15). If the court found them both invalid, the prosecution would have the opportunity to file a new statement, which would include

5

an additional prior drug conviction.  (P. at 15).

At the conclusion of the plea proceeding, the  court scheduled the sentencing hearing for a later date, so that the minutes from the 1992 plea allocution would be available for review.  (P. at 17).

D.   Sentencing

Mr. Neely's sentencing took place on September 12, 2002. Justice Silverman first reviewed the 1992 plea allocution.  She noted that because the petitioner had been identified by the alias "Kevin Williams" during that proceeding, the court may not have been aware of the petitioner's previous conviction and therefore sentenced him as though he were a first-time offender.  (S. at 3).[4] Whether this was in fact the case or not, Justice Silverman confirmed that the petitioner had two prior violent felony convictions on his record: one in 1987 and one in 1992, both for attempted robbery.  (S. at 4).

Mr. Neely requested a hearing to challenge the two predicate convictions.  (S. at 5-7).  First, he claimed that the 1992 conviction was unconstitutional because his trial counsel advised him to accept a plea in order to receive a one-year sentence, which he had already satisfied with time served, despite the fact that he had prevailed on a motion to suppress some of the prosecution's evidence.  (S. at 5-6).  In response to this contention, Justice

---

[4] "S." refers to the transcript of the petitioner's sentencing.

6

Silverman asked:

> Why was [counsel] ineffective?  He told you the truth.
> You knew you won the hearing, that's something that had
> apparently been suppressed, but you can take a year and
> get out or you could go to trial and still get up to
> eight and a third to twenty-five.  So you considered
> that, didn't you?

(S. at 6).                    ____

Mr. Neely next argued that in 1987 he was coerced into pleading guilty to attempted robbery by the prosecution's threat to add a bail jumping charge.  (S. at 7).  Because the petitioner had already served sixty days, he accepted a ninety-day sentence for attempted robbery in order to avoid a potential one-to-three-year sentence for bail jumping.  (S. at 7-8).

After hearing these arguments, the court denied the petitioner's request for a hearing on the predicate convictions. (S. at 8).  Justice Silverman reasoned, "It seems as though you took the benefit of certain offers that were made to you.  Nobody stopped you from going to trial.  You made a decision, you had the time in both times and you elected to take these offers."  (S. at 8).

Mr. Neely argued that he was not advised of the rights he would lose by pleading guilty, including the right to a trial.  (S. at 8). In response, the court reviewed the minutes from the 1992 plea allocution and determined that "there was no violation of [the petitioner's] constitutional rights."  (S. at 8).  The court then adjudicated the petitioner a persistent violent felony offender (S. at 8-9) and imposed the promised sentence of twelve years to life

imprisonment. (S. at 10). Additionally, the court denied motions by the petitioner challenging the outcome of the Mapp hearing and requesting that the court set aside his guilty plea. (S. at 12-13). Justice Silverman specifically found that Mr. Neely's plea was voluntary. (S. at 13).

E.  Subsequent History

In October 2002, the petitioner moved pursuant to New York Criminal Procedure Law ("CPL") § 440.10 to vacate the judgment and set aside the sentence. He argued that his guilty plea was not voluntary, that the sentencing court improperly adjudicated him a persistent violent felony offender, and that his sentence was harsh and excessive. (Petitioner's Motion to Vacate the Judgment and Set Aside the Sentence, attached as Exh. A to Declaration of Ashlyn Dannelly dated March 4, 2008 ("Dannelly Decl.")). Justice Silverman denied this motion but informed the petitioner that he could raise these issues on direct appeal. (PS at 4).[5]

Mr. Neely sought leave to appeal Justice Silverman's denial of the motion. The Appellate Division, First Department, granted leave and ordered that the appeal be consolidated with the petitioner's direct appeal. (Certificate granting leave dated Feb. 4, 2003, attached as Exh. C to Dannelly Decl.). In that appeal, the petitioner argued that the prosecution did not present credible

---

[5] "PS" refers to the transcript of the hearing held on the petitioner's post-conviction motion on October 31, 2002.

evidence that the police had probable cause to arrest him, and therefore the trial court should have suppressed the evidence recovered upon his arrest. (Brief for Defendant-Appellant ("Pet. App. Br."), attached as Exh. F to Dannely Decl., at 15). He further asserted that the prosecution's witness had tailored his testimony at the Mapp hearing to overcome constitutional objections. (Pet. App. Br. at 16).

The Appellate Division affirmed the conviction, finding that the denial of the suppression motion was proper. The court rejected the argument that the prosecution's case had been tailored to overcome constitutional objections and found that Justice Altman's credibility determinations were supported by the record. People v. Neely, 18 A.D.3d 394, 395, 796 N.Y.S.2d 61, 61-62 (1st Dep't 2005). The petitioner's remaining claims were unpreserved, and the Appellate Division accordingly declined to review them in the interest of justice. Id., 796 N.Y.S.2d at 62. The court also stated that if it were to review those claims, it would hold that they were without merit, as the police had probable cause to pursue, arrest, and search Mr. Neely. Id., 796 N.Y.S.2d at 62. Thereafter, the New York Court of Appeals denied the petitioner's application for leave to appeal. People v. Neely, 5 N.Y.3d 808, 803 N.Y.S.2d 37 (2005).

The petitioner next moved for a writ of error coram nobis in the Appellate Division. He argued that his appellate counsel

provided ineffective assistance (1) by failing to argue that his sentence was excessive, (2) by failing to argue that trial counsel had been ineffective for not objecting to the sentencing court's rulings, and (3) by failing to object to the consolidation of the appeal from the decision on his 440.10 motion with his direct appeal. (Petition for a Writ of Error Coram Nobis ("Coram Nobis Pet."), attached as Exh. L to Dannelly Decl., at i). The Appellate Division denied the petition (Order dated March 20, 2007, attached as Exh. O to Dannelly Decl.), and Mr. Neely's application for leave to appeal that determination was likewise denied. (Certificate Denying Leave dated June 21, 2007, attached as Exh. Q to Dannelly Decl.).

Mr. Neely initially submitted a pro se petition for a writ of habeas corpus in this Court on November 10, 2006, while his coram nobis application was still pending in state court. Neely v. Fischer, 06 Civ. 15478 (S.D.N.Y. Dec. 27, 2006). The Honorable Chief Judge Kimba M. Wood dismissed the petition without prejudice on December 27, 2006, finding that the petitioner had not yet exhausted state court remedies for his ineffective assistance claims. (Order dated Dec. 27, 2006, 06 Civ. 15478). Nonetheless, she informed the petitioner that he could file a new petition within the one-year limitation period. On September 18, 2007, Mr. Neely filed the instant petition.

Discussion[6]

     The petitioner challenges his conviction on the grounds that;
(1) his trial counsel provided ineffective assistance by failing to
argue that the trial court improperly shifted the burden to the
petitioner at sentencing, that the trial court breached the plea
agreement, and that the petitioner was entitled to withdraw his
guilty plea; and (2) appellate counsel provided ineffective
assistance by failing to argue that trial counsel was ineffective,
that the sentence was excessive, and that the trial court should
have allowed the petitioner to withdraw his guilty plea.[7] (Pet., ¶

---

     [6] Prior to passage of the Antiterrorism and Effective Death
Penalty Act (the "AEDPA"), factual findings made by a state court
after an evidentiary hearing were presumed correct in a federal
habeas proceeding, however, federal courts were not required to
defer to state court determinations of law and of mixed questions
of law and fact.  See Thompson v. Keohane, 516 U.S. 99, 107-12
(1995); Brown v. Artuz, 283 F.3d 492, 497 (2d Cir. 2002).  Under
the AEDPA, however, a writ of habeas corpus may not issue "with
respect to any claim that was adjudicated on the merits in State
court proceedings unless the adjudication . . . resulted in a
decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by
the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

     The AEDPA standard applies to this case since Mr. Neely filed
his petition after the Act's effective date.  See Brown, 283 F.3d
at 498 n.2.  However, where, as here, the petitioner's claims fail
under the less deferential pre-AEDPA standard, there is no need to
conduct the AEDPA's more intricate analysis.  Cf. Kruelski v.
Connecticut Superior Court for the Judicial District of Danbury,
316 F.3d 103, 106 (2d Cir. 2003) (suggesting, in post-AEDPA cases,
that habeas courts should assess first whether state court's ruling
was erroneous under the "correct interpretation" of federal law at
issue, then whether the ruling was unreasonable).

     [7] It his initial petition in this Court, the petitioner argued
that the evidence seized upon his arrest should have been

13 and attached page).

A. <u>Exhaustion of Remedies</u>

_____ Before a state prisoner may receive federal habeas corpus review, he must first allow state courts a fair opportunity to consider his federal claims.  22 U.S.C. § 2254(b), (c); <u>see also</u>

---

suppressed, because the prosecution failed to present credible evidence that the police had probable cause to arrest him. Petition for Writ of Habeas Corpus, § 13, <u>Neely</u>, 06 Civ. 15478.  He did not reiterate this claim in his current petition and has therefore effectively abandoned it.

In any event, <u>Stone v. Powell</u>, 428 U.S. 465 (1976), bars federal habeas review of this claim, because it was fully litigated in the state courts.  In <u>Stone</u>, the Supreme Court held that "[w]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  <u>Id.</u> at 494.  The Fourth Amendment exclusionary rule is inapplicable on federal habeas corpus review "absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review . . . [T]he application of the rule is limited to cases in which there has been both such a showing and a Fourth Amendment violation."  <u>Id.</u> at 494 n.37.

Generally, a petitioner will have been denied an opportunity to litigate only "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process."  <u>Capellan v. Riley</u>, 975 F.2d 67, 70 (2d Cir. 1992).

Mr. Neely received a suppression hearing on this issue, and his appellate counsel further advanced the argument on direct appeal.  The petitioner thus received "an opportunity for a full and fair litigation" of the suppression argument in state court. The petitioner has not met the threshold requirements of <u>Stone</u> and <u>Capellan</u> that would permit this Court to review his Fourth Amendment claim.

Picard v. Connor, 404 U.S. 270, 277 (1971); Daye v. Attorney General
of New York, 696 F.2d 186, 190 (2d Cir. 1982).  A claim has been
"fairly presented" to the state court when the court has been
apprised of both the factual and legal premises of the claim upon
which the petitioner now seeks federal relief.  Picard, 404 U.S. at
276-77.  If any material factual or legal premises appear for the
first time in the federal petition, the state court has not had a
fair opportunity to rule on the claim.   Picard, 404 U.S. at 276;
Daye, 696 F.2d at 191-92.

     As the respondent concedes, the petitioner has exhausted his
ineffective assistance of appellate counsel claims.  (Memorandum of
Law in Opposition to the Petition for a Writ of Habeas Corpus
("Resp. Mem.") at 15).  The petitioner's ineffective assistance of
trial counsel claims, however, are unexhausted.  Although the
petitioner argued ineffective assistance of trial counsel in his
coram nobis petition, it was only as a predicate to his ineffective
assistance of appellate counsel claim.  A coram nobis challenge to
appellate counsel's failure to raise a claim does not exhaust the
underlying claim.  Turner v. Artuz, 262 F.3d 118 (2d Cir. 2001).
The underlying trial counsel claim is therefore unexhausted.
Nevertheless, a petition containing an unexhausted claim can be
denied provided that claim is meritless.  28 U.S.C. § 2254(b)(2)
("An application for a writ of habeas corpus may be denied on the
merits, notwithstanding the failure of the applicant to exhaust the

13

remedies available in the courts of the State."); <u>see also</u> <u>Ojeda v.
Artuz</u>, No. 96 Cv. 5900, 1997 WL 283398, at *3 n.5 (S.D.N.Y. May 29,
1997).  That is the case here.

    B. <u>Ineffective Assistance of Trial Counsel</u>

    A habeas petitioner's claim that he received ineffective
assistance of counsel is analyzed according to the principles set
forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  Under this
test, a petitioner must demonstrate (1) that the representation he
received "fell below an objective standard of reasonableness," <u>id.</u>
at 688, and (2) "that there is a reasonable probability that, but
for counsel's unprofessional errors, the result of the proceeding
would have been different."  <u>Id.</u> at 694.  The court must be "highly
deferential" and "indulge a strong presumption that counsel's
conduct falls within the wide range of reasonable professional
assistance."  <u>Id.</u> at 689.  The performance and prejudice prongs set
forth in <u>Strickland</u> may be addressed in either order, and "if it is
easier to dispose of an ineffectiveness claim on [one of the
grounds] . . . that course should be followed."  <u>Id.</u> at 697, 699.

    1. <u>Failure to Object to Shifting of the Burden</u>

    The petitioner first argues that he was denied his right to
effective representation because trial counsel failed to object when
the court placed on him the burden of challenging the
constitutionality of the two prior violent felony convictions.  The
petitioner argues that the prosecution had an obligation to rebut

14

his challenges, that it did not fulfill this obligation, and that trial counsel should have objected to the imposition of the burden on the defense. (Memorandum of Law in Support of Petition for Writ of Habeas Corpus ("Pet. Memo.") at 8-11).

Mr. Neely is unable to show that trial counsel's failure to object to the allocation of the burden meets the first prong of the Strickland test, let alone the second. Under state law, the prosecution need only prove the existence of previous felony convictions, not their constitutionality. People v. Harris, 61 N.Y.2d 9, 15, 471 N.Y.S.2d 61, 63 (1983). Once the prosecution establishes the fact of the prior conviction, the burden shifts to the defendant to produce evidence supporting his claim that the conviction was unconstitutionally obtained. Id. The Supreme Court upheld this practice in Parke v. Raley, 506 U.S. 20, 31 (1992), ruling that a state may place the burden of producing evidence on the defendant to show in a recidivist proceeding that prior convictions were unconstitutionally obtained.

The prosecution established the fact of the prior convictions when it produced a predicate felony statement containing two prior violent felony convictions (S. at 4), as required by CPL § 400.16. At that point, the burden shifted to the petitioner to challenge those convictions. Thus, the court did not abuse its discretion in holding the petitioner to his burden, and counsel's failure to object was not unreasonable. Because the petitioner cannot satisfy

15

the deficient performance prong of the <u>Strickland</u> test, I need not determine whether any prejudice resulted.

2. <u>Failure to Object to Breach of the Plea Agreement</u>

The petitioner next claims that he was denied his Sixth Amendment right to effective representation when his trial counsel failed to object that Justice Silverman breached the plea agreement. The alleged breach occurred when "the court failed to honor its prior promise, to produce and review the two former plea allocutions . . . ." (Pet. Memo. at 11). Mr. Neely argues that if his trial counsel had persuaded the court to review both plea allocutions properly, Justice Silverman would have recognized that both convictions were constitutionally invalid. (Petitioner-Applicant Traverse Brief at 21).

The petitioner is mistaken in his reading of the transcript of the plea proceeding. He contends that Justice Silverman made the following statement during the plea hearing: "If upon review of the two prior plea allocutions, which you are challenging, prove to be unusable, then the court will direct the People to re-file 'predicate statements' as oppose[d] to 'persistent violent statements,' which in turn would induce a downward departure of between five and seven years." (Pet. Memo. at 11). However, this statement does not appear in the transcript. While Justice Silverman promised to "make a ruling" on the validity of the two prior convictions and noted that the prosecution would have the

16

opportunity to re-file the predicate felony statement if she ruled them invalid (P. at 15), she never promised to "produce" or to review both plea allocutions.

The court was not obligated to produce any evidence. Justice Silverman chose to review the 1992 allocution only because there was a possible issue with the sentencing determination that could potentially be resolved by reviewing the minutes. (H. at 8). However, production of the minutes of the 1987 plea allocution was never discussed.

Mr. Neely also argues that Justice Silverman failed to review the entire 1992 plea allocution, as she only received seven pages of an eight-page transcript. (Pet. Memo. at 12). He contends that his counsel knew that the court did not receive page five, and, despite having a copy of the complete transcript "in her possession," counsel nonetheless failed to offer it to the court. (Coram Nobis Pet. at 11).

Mr. Neely provided this Court with a copy of the 1992 transcript, noting that page five was missing. (1992 Plea Allocution Transcript, attached as Exh. F to Petition for a Writ of Habeas Corpus ("Habeas Pet.")). However, there is no indication in the transcript of the sentencing in 2002 that the court did not have page five of the document at the time of sentencing. Thus, there is no evidence that the court conducted an inadequate review of the 1992 allocution.

Although articulated in terms of breach of the plea agreement, the petitioner's primary argument appears to be that both predicate convictions used to enhance his current sentence were unconstitutional. He challenges these convictions on the grounds that (1) his 1987 guilty plea was coerced, and (2) his 1992 conviction was unconstitutionally obtained because he received ineffective assistance of trial counsel and because the court failed to advise him of his rights. (Pet. Memo. at 11-13; S. at 5-7)

To the extent the petitioner intends to challenge directly the constitutionality of his prior convictions, his claims are barred by the doctrine established by Lackawanna County District Attorney v. Coss, 532 U.S. 394 (2001). In Coss, the Court held that 28 U.S.C. § 2254 does not provide a remedy for a state prisoner challenging a current sentence "on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody." Id. at 396. Because the petitioner's prior sentences are now expired, his direct challenge to the constitutionality of the prior convictions is not cognizable in a federal habeas action.

Coss, however, does not bar an indirect challenge to prior convictions, such as the petitioner's claim that his counsel was ineffective for not addressing the court's failure to properly review the prior convictions. See Scott v. Pliler, No. C 00-1743, 2004 WL 1465695, at *3 (N.D. Cal. May 27, 2004). Analysis of the

18

indirect claim requires an evaluation of the prior convictions to see whether counsel should have insisted that the court scrutinize them more carefully.  See id. at *4.

### a. 1987 Conviction

The petitioner claims that in 2002 trial counsel should have asked that the court review the 1987 plea allocution because this would have revealed that the 1987 guilty plea was invalid.  I understand Mr. Neely's argument to be that his plea was involuntary because he was not informed that he would be sentenced to a period of probation in addition to the agreed-upon ninety day sentence. (Coram Nobis Pet. at 16-19).[8]  In support of this argument, the petitioner has submitted the transcript of the 1987 plea allocution and a portion of his rap sheet.

The 1987 transcript does not show that the plea was uninformed. Nor has the petitioner provided any evidence that the probation term was contrary to the agreement or that he voiced any complaint about the imposition of probation at any time.  He argues only that "there is nothing in the allocution of the [1987 conviction] that indicates a partial and/or complete plea to probation . . ." (Coram Nobis Pet. at 18), but this does not satisfy his burden of proving the plea was involuntary.  See Boykin v. Alabama, 395 U.S. 238, 242-43 (1969)

---

[8] This was not the same argument the petitioner advanced to Justice Silverman in 2002.  At that time he argued that the prosecutor coerced him into taking the plea in 1987 by threatening to add a bail jumping charge.  (S. at 7).

(guilty plea valid if it is voluntary and intelligent).  It therefore would have been futile for counsel to insist that the court review the 1987 plea allocution.

### b. 1992 Conviction

Mr. Neely further claims that trial counsel in 2002 should have objected when the court failed to review the 1992 plea allocution in its entirety.  He argues that because his motion to suppress in that case was successful, his attorney should not have advised him to plead guilty.  (Coram Nobis Pet. at 14-15).

In the context of a plea offer, a petitioner must demonstrate that he did not receive "the benefit of counsel's professional advice on th[e] crucial decision" of whether to accept a plea offer. Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996) (quotation marks and citation omitted).  However, Mr. Neely reaped significant benefits from taking his attorney's advice in 1992, as the court noted when sentencing him in 2002.  (S. at 6, 8).  He received a sentence of one year, which was covered by time already served, instead of a potential eight and one-third to twenty-five year sentence after a trial.  (S. at 5). Given the petitioner's exposure, his attorney's advice was certainly reasonable.  Counsel in the 2002 proceedings thus had no basis to argue for a more thorough review of the 1992 plea allocution.

The petitioner also challenged the 1992 conviction on the basis that the court did not advise him of the rights he would be waiving

20

by pleading guilty.[9]  In 2002, Justice Silverman determined from the 1992 transcript that this was not the case, but Mr. Neely maintains that the court's review was inadequate.

It is well settled that on habeas corpus review deference is to be given to factual findings made by state courts.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); see Murden v. Artuz, 497 F.3d 178, 197 (2d Cir. 2007); Hoi Man Yung v. Walker, 468 F.3d 169, 176 (2d Cir. 2006).  Furthermore, "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Mr. Neely's surmise that the missing page from the 1992 transcript would demonstrate that the court failed to advise him of his rights does not constitute clear and convincing evidence.  Justice Silverman's factual finding is thus entitled to deference.

---

[9]  It is unclear from the hearing transcript which prior conviction the petitioner intended to challenge with this argument. In his coram nobis brief, the petitioner advanced the argument with respect to the 1992 conviction.  (Coram Nobis Pet. at 17-18).  In any event, if the petitioner intended to challenge his 1987 conviction on this ground, the 1987 transcript reveals that the petitioner was aware of the rights he waived upon pleading guilty. (1987 Plea Allocution Transcript, attached as Exh. F2 to Habeas Pet., at 5-6).

Without providing evidence that he was not advised of his rights, the petitioner has again failed to show that his 2002 counsel had any basis to insist on a more thorough review of the 1992 plea allocution. Because the petitioner cannot satisfy the deficient performance prong of the Strickland test, I need not determine whether he suffered any prejudice.

### 3. Failure to Argue for Plea Withdrawal

The petitioner further claims that he was denied his Sixth Amendment right to effective representation when his trial counsel did not argue that the court's supposed failure to adequately review his prior convictions entitled him to withdraw his guilty plea. As discussed above, the court committed no breach. Accordingly, the petitioner was not entitled to withdraw his guilty plea, and counsel was not objectively unreasonable in failing to argue otherwise.

Furthermore, Mr. Neely cannot show evidence of prejudice resulting from counsel's allegedly deficient performance. Petitioner's counsel requested that the court set aside his guilty plea, and the court summarily denied his request. (S. at 13). Any additional argument regarding withdrawal of the plea would have been superfluous.

The petitioner has not demonstrated that trial counsel's representation at any time fell below an objective standard of reasonableness, and his claim therefore fails.

### C. Ineffective Assistance of Appellate Counsel

The petitioner also faults his appellate counsel for (1)

22

failing to raise a Sixth Amendment claim for the ineffective assistance of trial counsel, (2) failing to address the petitioner's request to withdraw his guilty plea, and (3) failing to argue that his sentence was excessive and unlawful.

The two-prong Strickland analysis applies to the performance of appellate counsel as well. Clark v. Stinson, 214 F.3d 315, 321 (2d Cir. 2000). In order to show prejudice in the appellate context, "a petitioner must demonstrate that there was a reasonable probability that his claim would have been successful before the state's highest court." Mayo v. Henderson, 13 F.3d 528, 534 (2d Cir. 1994) (quoting Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992)); see also Aparicio v. Artuz, 269 F.3d 78, 96 (2d Cir. 2001) (appellate counsel not ineffective for failing to raise clearly unpreserved claim). _____

1. Failure to Address Ineffectiveness of Trial Counsel

The petitioner's claim that his appellate counsel was ineffective for failing to present a claim of ineffective assistance of trial counsel is meritless. In order to prevail on such a claim, "a petitioner must demonstrate a reasonable probability that the appellate court would have found that the performance of trial counsel itself failed the two-part Strickland test . . . ." Garcia v. Scully, 907 F. Supp. 700, 706 (S.D.N.Y. 1995). In this case, for the reasons discussed above, the Appellate Division would not have found that the petitioner's trial counsel was ineffective. Appellate counsel was therefore not ineffective for failure to

advance a doomed argument.  <u>See</u> <u>United States v. Arena</u>, 180 F.3d 380, 396 (2d Cir. 1999).

### 2. <u>Failure to Address Request to Withdraw Plea</u>

Mr. Neely's claim that his appellate counsel was ineffective for neglecting to address his request to withdraw his guilty plea also fails under the <u>Strickland</u> standard.  As discussed above, the court did not breach the plea agreement; thus, the petitioner was not entitled to withdraw his guilty plea.  This argument was meritless, and it was therefore appropriate for appellate counsel to forego it.

### 3. <u>Failure to Argue Excessive Sentence</u>

Finally, the petitioner's claim that appellate counsel was ineffective for failing to argue that his sentence was unduly harsh and unlawful also fails under <u>Strickland</u>.  Mr. Neely first argues that the sentence of twelve years to life constituted cruel and unusual punishment in violation of the Eighth Amendment.  (Pet. Memo. at 23).  This argument is meritless on its face, because the petitioner agreed to this specific sentence and in fact received the minimum sentence within the statutory range.  <u>See</u> N.Y. Penal Law § 70.08(3)(c); <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992). Succinctly stated, the petitioner got what he bargained for. Accordingly, it was appropriate for appellate counsel to omit this argument as well.

Mr. Neely also argues that his sentence violates due process. I understand his contention to be that in 2002 the court failed to

sentence him in accordance with the law when it adjudicated him as a persistent violent felony offender without his previously having received predicate felony offender status.  (Pet. Memo. at 24). This appears to be primarily a state law argument, but even if it had a federal constitutional dimension, it would fail on the merits. In New York, predicate felony offender status is not a prerequisite to a court's subsequent persistent violent felony offender adjudication.  The petitioner's two prior violent felony convictions were a sufficient basis to sentence Mr. Neely as a persistent violent felony offender.  See N.Y. Penal Law § 70.08(1)(a).  Thus, appellate counsel appropriately decided to omit this argument.

As Mr. Neely has failed to demonstrate that his attorney's performance was deficient, his claim of ineffective assistance of appellate counsel fails.

Conclusion

For the reasons set forth above, I recommend that Mr. Neely's petition for a writ of habeas corpus be denied.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Sidney H. Stein, Room 1010, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

25

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       July 14, 2008

Copies mailed this date:

Robert Neely
02-A-6041
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

Ashlyn Dannelly, Esq.
Assistant Attorney General
120 Broadway
New York, NY 10271-0332

26